# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ILLINOIS TRANSPORTATION TRADE ASSOCIATION, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) Case No. 14 cv 827 |
| v. | )<br>) Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, an Illinois municipal corporation, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Illinois Transportation Trade Association et al., include various taxi medallion owners, operators, and other taxi related companies (collectively "Taxis"), filed a seven Count Second Amended Complaint alleging constitutional violations under the Takings Clause, Equal Protection Clause, and Substantive Due Process in addition to state law claims of breach of contract, promissory and equitable estoppel. Defendant City of Chicago moves to dismiss the Second Amended Complaint in its entirety for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [45]. For the reasons stated herein, the motion is granted in part and denied in part.

**Background**

The following facts are taken from the Second Amended Complaint. (Second Amended Complaint ("SAC"), Dkt. 33). The plaintiffs are individuals and entities engaged in the licensed taxi and livery industry in Chicago, Illinois. Plaintiffs allege that the City of Chicago has arbitrarily violated their constitutional rights by applying burdensome and costly taxi and limo regulations to them, while permitting drivers in "Transportation Network Providers" ("TNP") to compete in the

1

"for-hire" transportation industry without having to comply with the same cost and regulations as plaintiffs.

The City regulates the taxi and livery/limousine services pursuant to its power to regulate the use of its streets by enacting ordinances regulating various aspects of taxi and livery service and issuing 6,800 licenses, known as medallions. The Municipal Code of Chicago Chapter 9-112 ("Ordinance") mandates that owners/operators of motor vehicles used for the transportation of passengers for hire with the city to be licensed as a taxicab (a medallion). The City further regulates the rescission, termination, revocation of the licenses as well as where the operators can go. See Chicago Mun. Code § 9-112-020 (SAC at ¶ 59). The City also regulates the sale and transfer of medallions. See Chicago Mun. Code § 9-112-480 (SAC at ¶ 60). The City has also issued Rules and Regulations governing taxis. (SAC ¶ 25).

Plaintiffs allege that the new ordinance governing TNPs, enacted on May 28, 2014, and codified in Municipal Code of Chicago Chapter 9-115, does not provide the same requirements for insurance, driver qualifications, vehicle qualifications, and fares as are imposed in the taxi ordinance. TNPs allegedly are subject to less onerous regulation, for example: taxis must undergo Chicago Police Department background check, TNPs do their own checks; taxis must submit annual drug tests conducted by authorities approved by the Commissioner, TNPs must have a drug policy but it does not need to include testing; taxis must undergo regular safety and maintenance inspections by the City, while it allows TNPs to be inspected elsewhere without a City-defined standard.

Plaintiffs allege the ordinance provides more onerous insurance requirements for taxis, including public liability insurance (minimum of $350,000 per occurrence) and workers' compensation insurance, typically costing well over $4,000 per year per taxi for coverage. The TNP ordinance now requires insurance, but it does not need to be issued by an insurance company "authorized to do business in the State of Illinois," and "qualified under the laws of Illinois to

assume the risk amounts" set forth in the Ordinance; it can be excess as opposed to primary; the minimum amounts are only $20,000 when the driver is awaiting dispatch, though it must be $1 million when providing a ride, and no workers' compensation insurance is required.

Taxis must pay $1,200 annually to the City for their license and the taxi affiliations must pay $500 plus $15 for each affiliated medallion. TNP's must pay $10,000 annually for their fleet regardless of the number of cars it deploys. The City sets maximum meter rates for taxis. TNPs set their own rates. Taxi drivers must have a chauffeur license, requiring a background check by the Chicago Police Department, training, safety courses and continuing education. Taxis must meet certain vehicle requirements under the Ordinance, including age and condition. The Ordinance further requires taxis to undergo regularly performed City vehicle inspection. TNPs are not required to have City inspections or any inspections at particular intervals. Taxi affiliations with more than 20 medallions must have 5% of their fleet that is wheelchair accessible, yet there is no such mandate that TNPs have wheelchair accessible cars in their fleet. Taxis are prohibited by the Ordinance to refuse service to a passenger based on destination. Further, taxis are required to abide by all federal, state, and City, non-discrimination laws, while there is no similar mandate for TNPs.

According to the Second Amended Complaint, individual medallions, allowing the owner to operate a single taxi sold for between $325,000 and $375,000. On September 13, 2013, the City announced that it would auction 50 medallions at a minimum price of $360,000 . (SAC at ¶ 22). Allegedly, there are over $900 million in outstanding loans financing Chicago medallions. (SAC at ¶ 31). Medallion owners are personally liable for the unpaid balances of the loans, which usually have a three-year term and many of the lenders have suspended lending activity on medallions. (SAC at ¶ 36). Plaintiffs assert that the City is depriving them of the value of the medallion and the exclusive right to operate a licensed taxi without compensation; subjecting them to disparate treatment

3

without a rational basis for the differences in the law; and otherwise violating their rights under the constitution and state law.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. When reviewing a defendants Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true ... state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

**Discussion**

*1. Count I and IV: Property Interest*

Count I of the Second Amended Complaint alleges that the City has taken the taxis' property without just compensation in violation of the Takings Clause of the Fifth Amendment to the United States Constitution applied to the states under the Due Process Clause of the Fourteenth Amendment. Count IV alleges a violation of substantive Due Process. The City moves to dismiss Count I and Count IV based on the lack of protectable property interest at stake.

Both the U.S. Constitution and the Illinois Constitution prohibit private property from being "taken for public use, without just compensation." U.S. Const., amend. V; Ill. Const. 1970, art. I, § 15. Private property includes "every kind and character, whether real, personal, tangible, or intangible." *City of Chicago v. Prologis*, 236 Ill. 2d 69, 77-78 (2010) (quoting *Illinois Cities Water Co. v. City of Mt. Vernon*, 11 Ill. 2d 547, 550-51, 144 N.E.2d 729 (1957)). An action under § 1983 alleging violation of substantive due process rights is limited to a determination of whether the municipality's

administration of a local ordinance was arbitrary and capricious and thereby deprived plaintiffs of their property. *Flower Cab Co. v. Petitte*, 658 F. Supp. 1170, 1179 (N.D. Ill. 1987) (citing *Barbian v. Panagis*, 694 F.2d 476, 480 (7th Cir. 1982)). The Court considers an ordinance "arbitrary" if it is unreasoned or enacted without adequate foundation. *See Scudder v. Town of Greendale, Ind.*, 704 F.2d 999, 1002 (7th Cir. 1983) (citing *United States v. Carmack*, 329 U.S. 230, 243, 67 S. Ct. 252, 258, 91 L. Ed. 209 (1946)).

The problem for plaintiffs here is the lack of a property interest. Although they assert that the medallion and its value in exclusivity is a protectable property interest, the Ordinance that issues the medallions provides no minimum value. It is, as plaintiffs point out, tied to market value and the influx of TNPs has diminished the value of the medallions, but so would an increase in the number of medallions with no other changes to the Ordinance. *See Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis*, 572 F.3d 502 (8th Cir. 2009). "[T]o have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Flower Cab Co. v. Petitte,* 658 F. Supp. 1170, 1175 (N.D. Ill. 1987) (quoting *Bd. of Regents v. Roth*, 408 U.S. 562, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)).

Plaintiffs cite *Boonstra v. City of Chicago,* 214 Ill. App. 3d 379, 574 N.E.2d 689 (1st Dist. 1991), and *Flower Cab Co. v. Petitte,* 658 F. Supp. 1170 (N.D. Ill. 1987), for the proposition that medallions are property. In *Boonstra*, the Illinois Appellate Court recognized a property interest in the assignability of the medallions. *Boonstra,* 214 Ill. App. 3d at 387. Even there, the court recognized the City of Chicago has a right to amend existing legislation. *Id.* Here, unlike in *Boonstra,* there was no amendment to the Ordinance that revoked any property interest in the medallion. The Ordinance did not alter the rights and requirements for the taxis, but instead created new regulations for TNPs. Taxi drivers are still able to use their medallions just as before, but their revenues may be less. *Flower Cab* is equally distinguishable. There, the City suspended the taxi ordinance entirely thereby

5

eliminating the transferability of the licenses. In *M & Z Cab Corp. et al. v. City of Chicago*, 18 F. Supp. 2d 941, 952 (N.D. Ill. 1998), the court recognized a property interest in the transferability of the taxi medallions, but found no taking where suspension of the transferability was temporary pending a revocation hearing.

While Illinois courts have recognized certain property interests in the transferability and assignability of the taxi medallions, there is no case law establishing a blanket property interest in their ownership or market value. Although plaintiffs here assert that the TNP Ordinance had the effect of diminishing the value of the medallions, there is nothing in the Ordinance or elsewhere that guarantees a minimum value of the medallions. The Eighth Circuit Court of Appeals in *Minneapolis Taxi Owners Coalition, Inc. v. City of Minneapolis*, found there was no protectable property interest in the market rate of taxi licenses "derived through the closed nature of the City's taxicab market." 572 F.3d at 509. In so holding, the Eighth Circuit reasoned that, "[a] property interest cannot be extended to the going-concern value of a licensed business where that going-concern value is merely speculative." *Id.* at 508. The court further explained that, "so long as the government retains the discretion to determine the total number of licenses issued, the number of market entrants is indeterminate." *Id.* at 509 (quoting *Members of the Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1334 (Fed. Cir. 2005)). Without such a property interest, plaintiffs' takings claim and their due process claim necessarily fail.

*2. Count V, VI, and VII: State Law Claims*

Plaintiffs bring three claims pursuant to state law: Count V for breach of contract; Count VI for promissory estoppel; and Count VII for equitable estoppel. In Illinois, to state a claim for breach of contract there must first be a valid and enforceable contract. Plaintiffs allege that the taxi Ordinance created a contract for the exclusive right to operate taxi services in Chicago and that the City breached that contract by allowing the TNPs to operate under different regulations, which

6

reduced the value of the taxi medallions. In *Chicago Limousine Service, Inc. v. The City of Chicago,* 335 Ill. App. 3d 489, 498 (1st Dist. 2002), the court held there was no breach of contract where the City amended the livery ordinance to increase the number of livery licenses available. There is a presumption in Illinois that an ordinance or statute does not create private contractual or vested rights "but merely declares a policy to be pursued until the legislature shall ordain otherwise." *Id.* at 495 (quoting *Fumarolo v. Chicago Board of Education,* 142 Ill. 2d 54, 104, 556 N.E. 2d 1283, 1305, 153 Ill. Dec. 177 (1990)). In *Chicago Limousine Service, Inc.*, the court reasoned that "[a]t best, the position of plaintiff, in relying on a condition created under an ordinance in investing and developing its business, was a position that it shared with any other livery service created, maintained or expanded at that time. In that regard, plaintiff's complaint does not allege, nor can it, that defendant made any direct promise to it or to any other livery operators to so limit the number of licenses, or the manner by which they could be issued, in exchange for their investment efforts." *Id.* at 498. Because the ordinance itself did not preclude modification or repeal, the plaintiff there could not expect or rely on its permanence. *Id.*

Here, plaintiffs attempt to distinguish *Chicago Limousine Service, Inc.* based on the language of the statute at issue. The taxi Ordinance here provides an "exclusive right" to operate a taxi and the livery statute at issue in *Chicago Limousine Service, Inc.* expressly provided that the City could increase the number of livery licenses available. Yet, plaintiffs do not dispute that the City can increase the number of taxi medallions nor can they argue that an increase in taxi medallions would necessarily diminish the market value of the medallions through the greater supply. Thus, this Court finds no private contractual right in the Ordinance, where the City promises to maintain the number of "for-hire" vehicles. Further, each medallion owner has the exclusive right to operate a taxi under that medallion. Accordingly, the Court finds that plaintiffs fail to state a claim for breach of contract based on a right vested by the Ordinance.

7

Counts VI and VII allege promissory and equitable estoppel, respectively. As cited above, in *Chicago Limousine Service, Inc.*, the Illinois Appellate Court also dismissed a claim for promissory estoppel where the plaintiff argued that it would be inequitable and unjust to allow the value of its licenses to be destroyed by the City's decision to increase the number of licenses issued. *Id.* at 499. To state a claim for promissory estoppel, the plaintiff must plead "'that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012) (quoting *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 906 N.E.2d 520, 523-24, 329 Ill. Dec. 322 (2009)). There is no vested right in the mere continuance of a law. *Chicago Limousine Service, Inc.,* 335 Ill. App. 3d at 499.

Here, as in *Chicago Limousine Service, Inc.*, plaintiffs have alleged sufficient facts showing that they relied on the taxi ordinance by creating, maintaining, and operating a taxi and that they suffered a financial detriment as a result of the influx of TNPs on the for-hire transportation market. Yet, this Court finds that there are insufficient facts to show that this reliance was the product of an unambiguous promise by the City not to alter the number or type of for-hire transportation licenses available in Chicago. Plaintiffs further argue that equity compels relief. This Court disagrees based on the lack of reasonable reliance, especially where plaintiffs recognize that the Ordinance could be subject to amendment and the number of medallion increased.

*3. Count II and III: Equal Protection Disparate Treatment*

Counts II and III allege violations of the Equal Protection Clause for disparate application of the taxi regulations, before enactment of the TNP Ordinance (Count II) and after enactment of the TNP Ordinance (Count III). The City argues that plaintiffs cannot show that they are similarly situated to TNPs and that there was no rational basis for the City's initial non-enforcement of the taxi regulations against TNPs or the subsequent creation of a new ordinance regulating TNPs

differently. The Court finds the City's argument unpersuasive and finds that plaintiffs have at least stated a claim under equal protection.

"To be considered similarly situated, comparators must be *prima facie* identical in all relevant respects or directly comparable to [plaintiff] in all material respects." *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005) (internal citations omitted). The City argues that TNPs are not similarly situated to taxis because they cannot be hailed on the street, rides are prearranged, there is a pre-existing contractual relationship between the TNP and the consumer, the driver is not unknown to the consumer, and fares are not set by the City. Even a cursory examination of these purported differences demonstrates that these are not material differences justifying disparate treatment of taxis and TNPs. First, with respect to the manner of obtaining a ride, this Court sees no material difference between raising your arm to hail a cab on a street corner and putting your location in an app with a request for immediate transport. Similarly, rides can be prearranged in taxis as well as TNPs. The pre-existing contractual relationship is also an illusory difference since the taxi passenger is immediately bound by a contract of adhesion upon entering the taxi. The driver of a TNP, whether there is a photograph and description on the app is not necessarily any more "known" to the consumer than a taxi driver whose photograph and name must appear inside the vehicle and who is traceable by medallion number. Additionally, consumers can provide comments to the taxi affiliation through the 3-1-1 number. Lastly, the fact that fares for taxis are set by the City is an artificial difference created by defendant. This Court finds that taxis and TNPs are similarly situated, at least at the present stage. Each provides for-hire transportation within the City of Chicago, rides can be pre-arranged for a set time, hailed, or virtually-hailed through an app, consumers are contractually bound to pay for the services and may do so by credit card.

Further, none of the supposed differences are rationally related to the differences in treatment under the Ordinance. As outlined in the background, the City regulates taxis and TNPs differently in the following areas, among others: background checks, drug tests, vehicle age, maintenance and inspection, insurance, annual fees, and unregulated fares. The Court notes each of these areas of regulation are based, at least in part, on safety concerns. In all these areas the requirements for taxis are far more onerous than for TNPs. The City asserts that it has an interest in increasing the availability and accessibility of cost-effective transportation as well as fostering diversity and consumer choice in the "for-hire" market. While the Court does not doubt that these are legitimate interests for the City to hold, there is simply no relationship to the differences in the Ordinance. This Court fails to see how any of the purported differences relate to the stated rational such that it justifies maintaining substantially heavier burdens on taxis for training, qualifications, drug testing, vehicle condition, insurance, and fees. Both the purported differences between taxis and TNPs and their relationship to the stated rational appear utterly arbitrary to this Court.

**Conclusion**

Based on the foregoing, this Court grants dismissal of Counts I, IV, V, VI, VII with prejudice and denies dismissal of Counts II and III.

IT IS SO ORDERED.

Date: September 22, 2015

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge